UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SYLVIA WHITFIELD,                          )
                                           )
            Plaintiff,                     )
                                           )  04 C 7399
       v.                                  )
                                           )  Judge George M. Marovich
JO ANNE B. BARNHART, COMMISSIONER )
OF THE SOCIAL SECURITY ADMIN.,            )
                                           )
            Defendant.                     )

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Sylvia Whitfield ("Whitfield") filed this action to appeal a final administrative

decision denying her application for disability benefits under the Social Security Act.  Plaintiff

and defendant have filed cross-motions for judgment on the administrative record, and plaintiff

has also moved for a remand.  For the reasons set out below, the Court denies the motion for

remand, denies plaintiff's motion for judgment and grants defendant's motion for judgment.

I.     **Background**

On July 22, 2002, Whitfield applied to the Social Security Administration ("SSA") for

disability benefits.  In her application, Whitfield stated that she "became unable to work because

of [her] disabling condition on December 6, 2001."  (R. 94).  As of the date of the hearing,

Whitfield was a 44-year-old woman, who stood 5' 3" and weighed 195 pounds.  (She is now 47.)

Whitfield stayed in school until some point in the 12th grade.  She later earned her GED.  (R.

29).

**Whitfield's work experience**

Prior to applying for disability benefits, Whitfield worked in a number of positions. (R. 109). In the late 1980's, she worked as a nurse's aid. From June 1994 to March 1999, Whitfield performed environmental services work for a casino. She had problems keeping up with the work on that job because she was not as quick as they wanted her to be. (R. 46). Next, from March 1999 to December 2001, Whitfield worked in customer service for a telephone company. After applying for disability benefits, Whitfield attempted a trial position as a receptionist. (R. 29). She testified that she was unable to keep up with the work. (R. 30).

**Whitfield's physical condition**

Whitfield has described the illnesses and/or injuries that she claims prevent her from working. In her application interview, she stated that her ability to work was affected by heart valve damage, shortness of breath, fatigue and carpal tunnel syndrome. (R. 108). At some point (the timing of which is not clear from the record), Whitfield submitted a form entitled "Claimant's Statement When Request for Hearing is Filed and the Issue is Disability". (R. 144). In that form, Whitfield stated that she was also in therapy for a lumbar disk and spinal injury and that she experienced pain while sitting or standing for too long. (R. 144).

At her administrative hearing, Whitfield testified that she has constant pain in her back and wrist. (R. 32). The ALJ asked Whitfield to rate her pain on a scale of zero ("no pain at all") to ten ("pain [that] would rob you of the ability to pay attention to your surroundings" such that the ALJ could "start going through your handbag" without your noticing). (R. 33). Whitfield testified that her wrist pain often gets to level ten and that it was at a level ten right as she was testifying. (R. 33). (She later said the pain was closer to a seven. (R. 47).) Whitfield also

testified that after about fifteen minutes of sitting, her back pain reached a pain level between seven and nine. (R. 34). Whitfield testified that she could sit for about ten minutes before needing to stand and stand for about ten minutes before needing to sit. (R. 36). Whitfield further testified that she does not lift heavy items (such as milk cartons), shop on her own or make meals. (R. 38-39, 43). She frequently drops things. (R. 48). Whitfield testified that she has more trouble with her right hand than her left, though the left sometimes swells as well. (R. 49). Whitfield takes Vicodin and Tylenol for the pain.

Several physicians examined Whitfield. Stanley Rabinovitz, M.D. ("Dr. Rabinovitz"), evaluated Whitfield in April 2003. (R. 195-198). Dr. Rabinovitz noted that Whitfield believed her carpal tunnel syndrome was the result of repetitive use of her hands in computer work. He noted that Whitfield was able to do "routine household chores" such as "open[ing] a door, us[ing] a key and button[ing] a blouse without difficulty." Dr. Rabinovitz made the following observations as to Whitfield's carpel tunnel syndrome:

> The patient has a history of bilateral carpal tunnel syndrome but has not undergone surgery for this problem. Current physical examination did reveal mild limitation in grip strength and digital dexterity in the right hand and normal grip strength and digital dexterity in the left hand. On a scale of 1-5 with 5 being normal grip strength, grip strength in the right hand is 4/5 and it is 5/5 in the left hand. Tinel's and Phalen's signs are positive, especially on the right at the wrist. The patient used a right wrist brace but needed no assistive device when being examined. Gait and station were normal. The patient had no difficulty getting on and off the examining table and could squat halfway down. Neurological examination was within normal limits.

(R. 198). The doctor also noted that Whitfield has a history of "noninsulin dependent diabetes" and depression, for which she was taking Paxil.

Samiullah M. Choudry, M.D. ("Dr. Choudry"), examined Whitfield in May 2003. Dr. Choudry's diagnostic impressions included carpal tunnel syndrome and asthma. Dr. Choudry did not, however, diagnose any lumbar or spinal injury. (R. 186). In fact, Dr. Choudry noted with respect to Whitfield's spine "[n]o anatomic abnormality of cervical, thoracic or lumbar spine" and that Whitfield achieved lumbar flexion to 90 degrees." (R. 186).

Whitfield was also evaluated by William Hilger, Ph.D. ("Dr. Hilger"), a clinical psychologist who was asked to evaluate Whitfield's mental state in connection with her claim for disability. (R. 200-204). Dr. Hilger observed:

> Sylvia came by public transportation to the appointment and appeared on time to be a neat, clean, casually dressed, nicely groomed, and very obese woman with brightly painted fingernails and with her hair styled in curls. She exhibited a normal gait and posture and showed no evidence of invalidism. She could speak in a fluent and articulate manner. She showed no pain behavior in the evaluation in walking, arising, sitting, or standing. She was extremely evasive, defensive, and irritable in providing information. At one point she became somewhat mildly tearful. She put forth little or no effort in answering questions and would often respond "I don't know." She could give up very quickly in questions that were difficult for her. *I had the distinct impression that she was attempting to present herself as being far more disturbed and incapable than she may actually be.*

(R. 200) (emphasis added). Dr. Hilger evaluated Whitfield's mental capacity, memory, knowledge, math skills, judgment and reasoning. He noted that he "found Sylvia very difficult to evaluate due to her marked evasiveness, defensiveness, irritability, and general lack of cooperation, effort, and obvious malingering." (R. 203). Dr. Hilger diagnosed Whitfield with malingering disorder "with exaggeration of symptomology" and noted that while she "claimed to have difficulty standing and to become out of breath frequently[,]" Dr. Hilger "did not observe any wheezing or shortness of breath" during her examination. Dr. Hilger also observed:

Sylvia likely has fair mental potential but little or nor [sic] motivation to perform work related activities involving understanding and memory, sustained concentration and persistence, social interaction, and adaptation. She would rather be dependent on her mother and others for her support. She is a very irritable sullen, self-centered type of person who seems to have an ax to grind against the world.

(R. 204).

Next, on June 10, 2003, Whitfield saw Kirk Boyenga, Ph.D. ("Dr. Boyenga"), for a psychological evaluation. (R. 209-221). Dr. Boyenga concluded that Whitfield had a personality disorder that was "not severe." (R. 209). He found that Whitfield was mildly restricted with respect to activities of daily living, had moderate difficulty maintaining social functioning and had mild difficulties maintaining concentration, persistence or pace. Dr. Boyenga concluded:

Claimant experiences a personality disorder. She presents an inconsistent history. There is no prior treatment record and she presents a sub-therapeutic prescription of Paxil. Observed findings are not consistent with her report. She attends meetings, runs errands, cares for a young child & travels alone. Her condition is not severe.

(R. 221).

In addition to the physician evaluations, Whitfield submitted to two functional capacity evaluations–one in January 2003 and another in June 2003. (R. 187-194; 223-230). The result of the January 2003 functional capacity evaluation was that Whitfield could lift a maximum of 20 pounds but could lift only 10 pounds on a frequent basis. The evaluation also concluded that Whitfield could stand or walk for six hours of an eight-hour shift (with breaks) and could sit for six hours of an eight-hour shift (with breaks). Whitfield was not found to have any postural, visual, communicative or environmental limitations or limits in her ability to push or pull. Whitfield was found to be unlimited in her ability to reach or handle objects but was found to be

limited to occasional finger manipulation. The June 2003 functional capacity evaluation resulted in a nearly identical conclusion. The only thing that changed from the January to the June 2003 evaluation was Whitfield's manipulative limitations. In June 2003, Whitfield's left hand was found to be unlimited, and her right hand, while unlimited as to reaching, was found to be limited with respect to object handling and finger manipulation. (R. 226).

In June 2003, Whitfield's representative (who was not an attorney) provided the ALJ with a note on a prescription pad from H.A. Metcalf, D.C., S.C., a chiropractor. The note, dated June 17, 2003 stated:

> TO
> Ms. Whitfield
> 6-17-03
> SUBJECT
> MESSAGE
> Dx: cervical & Lumbar sprain
> Receiving therapy to these
> [signature]

(R. 206).

### Procedural history

Whitfield's claim for disability benefits has been denied by the Social Security Administration. Her claim was initially denied on or about February 10, 2003. (R. 234-238). In denying the application, the Social Security Administration noted:

> The medical evidence in [sic] file shows that your condition does cause some restrictions in your ability to function. However, you still have the ability to do light work. We realize that your condition prevents you from doing your past job(s), but you are still able to do other types of work which are less demanding.

(R. 238).

Whitfield requested a hearing, which was held on November 21, 2003. At the hearing, the ALJ sought the testimony of a vocational expert. The ALJ posed the following hypothetical question to the vocational expert:

> I'd like you to assume a 45 year–or 44-year-old individual with high school equivalency education and past relevant work experience the same as the Claimant's, limited to a full range of light work, except that there would be no continuous manipulation and the dominant right upper extremity would be used primarily to assist the left. Are there any jobs within those limitations that such an individual could perform?

(R. 60). The ALJ clarified that the right hand would do no independent manipulations but might be used to assist the left hand. (R. 60). The vocational expert testified that jobs existed in the Chicago metropolitan area that could be performed by such an individual. He testified that the individual could, for example, work as an usher (in one of 1,000 such positions in the area), as a desk guard/surveillance system monitor (in one of 5,000 such positions in the area) or as a foot messenger (in one of 500 such positions in the area). (R. 60-62). Whitfield's representative asked the vocational expert to consider the same individual except to assume that she could use her hands for only ten minutes at a time without taking a break and that her pain medication affected her ability to meet production standards. (R. 63-64). The vocational expert testified that the inability to use one's hands for more than ten minutes would likely preclude employment. (R. 64).

On August 17, 2004, the ALJ issued an opinion denying Whitfield's request for disability benefits. Whitfield filed a request for review with the Appeals Council, which denied her request for review. The ALJ's decision, thus, became the final decision of the Commissioner of Social

Security. Whitfield filed an action in this Court for review of that decision. Both parties have moved for summary judgment.

## II.  Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

An individual denied Social Security benefits by the Commissioner of Social Security Administration may seek review at the district court. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" *See* 42 U.S.C. § 405(g). This Court's review is limited to determining whether the ALJ's decision is "both supported by substantial evidence and based on the proper legal criteria." *Scheck v. Barnhart*, 357 F.3d 697, 698 (7th Cir. 2004). Substantial evidence is that which a reasonable mind would accept as support of a conclusion. *Id.* If the ALJ's decision is supported by substantial evidence, it "will be upheld even if an alternative position is also supported by substantial evidence." *Scheck*, 357 F.3d at 698 (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

## III.    Discussion

### A.    Plaintiff's motion for remand

A district court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" *See* 42 U.S.C. § 405(g).  Under this part of the statute, materiality means "that there is a 'reasonable probability' that the Commissioner would have reached a different conclusion had the evidence been considered, and 'new' means evidence 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997) (citing *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993)).

In this case, plaintiff moves for a remand to incorporate evidence of Whitfield's treatment from June 2003 to November 2003 by H.A. Metcalf, a chiropractor.  The Court concludes that the situation does not meet the statutory requirements for remand.  First, the evidence was in existence at the time of the hearing.  The documents cover the time period of June 2003 to November 2003, while Whitfield's hearing was held on November 21, 2003.  The ALJ issued the decision denying benefits on August 17, 2004.  Second, Whitfield has offered no good cause for why the evidence could not have been submitted earlier.  Whitfield has not asserted, for example, that she was unaware of the documents or that the doctor refused to release the records.  In fact, her representative submitted one document from the chiropractor and, presumably, was capable of submitting any additional records he deemed relevant.  Without a showing of good cause, the statute does not allow for a remand.  In any case, plaintiff has failed to show how the additional

records would change the result, i.e., that they are material.  Accordingly, the motion for remand is denied.

**B.     Plaintiff's claim for disability benefits**

To qualify for disability benefits under the Social Security Act, one must, among other things, be under a "disability," which is defined under the Act as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months

42 U.S.C. §§ 423(a)(1)(D); 423(d)(1).  In determining whether a claimant is disabled, the ALJ must consider whether:

> (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe v. Barnhart*, 425 F.3d 345, 351-352 (7th Cir. 2005) (citing 20 C.F.R. §§ 404.1520, 416.920).  The claimant has the burden of proof with respect to steps one through four, and the burden shifts to the Commissioner with respect to step five.  *Briscoe*, 425 F.3d at 352.  A finding of disability "requires an affirmative answer at either step three or step five."  *Briscoe*, 425 F.3d at 352.  In considering whether an applicant is disabled, the Social Security Administration requires "evidence from acceptable medical sources" and lists as the acceptable sources: licensed physicians (medical or osteopathic doctors), licensed or certified psychologists, licensed optometrists, licensed podiatrists and qualified speech language pathologists.  *See* 20 C.F.R. § 1513(a).

Here, the ALJ applied the proper legal standard when he considered the five steps set out in the regulations. (R.16-22). In addition, the ALJ's factual findings are supported by substantial evidence.

### Whether Whitfield was employed

At step one, the ALJ's conclusion that Whitfield was not employed was supported by substantial evidence, most notably Whitfield's testimony that she had not worked in several years. (R. 29). The ALJ did not count as substantial work Whitfield's unsuccessful attempt to perform receptionist work in 2003. (R. 16). Whitfield does not take issue with the ALJ's conclusion as to step one, and the Court does not disturb it.

### Whether Whitfield had a severe impairment listed in the regulations

At steps two and three, the ALJ considers whether the claimant has a severe impairment and whether it is (or is equal to) any impairment listed in the regulations as being so severe as to preclude substantial gainful employment. At steps two and three, the ALJ concluded:

> The medical evidence indicates that the claimant has mitral valve regurgitation and carpal tunnel syndrome, impairments that are 'severe' within the meaning of the Regulations but not 'severe' enough to meet or medically equal, either singly or in combination to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4.

(R. 18). In reaching these conclusions, the ALJ reviewed and considered the medical records and reports from Drs. Choudry, Rabinovitz, Hilger and Boyenga and the functional capacity evaluations.

The ALJ's decision at step two is supported by substantial evidence. Although the Court thinks the ALJ might have been generous in calling the mitral valve regurgitation and carpal tunnel syndrome severe, the ALJ's decision is supported by substantial evidence, most notably

the functional capacity evaluation. That evaluation concluded that Whitfield's right hand was limited with respect to object handling and finger manipulation.

Whitfield argues that the ALJ made a factual error when he failed to conclude that Whitfield's impairments included cervical and lumbar sprain. The Court disagrees and finds that the ALJ's conclusion that Whitfield did not suffer cervical or lumbar spine injury was supported by substantial evidence. The ALJ took note of Dr. Choudry's finding that Whitfield had no anatomic abnormality to her cervical or lumbar spine. (R. 17). Dr. Rabinovitz noted that Whitfield's "gait and station were normal," that she "had no difficulty getting on and off the examining table" and that she "could squat halfway down." (R. 198). Dr. Hilger observed that Whitfield "showed no pain behavior in the evaluation in walking, arising, sitting, or standing." (R. 200). This evidence from medical doctor and a psychologist are the types of evidence the SSA regulations state are acceptable. *See* 20 C.F.R. § 404.1513(a). Thus, substantial evidence supports the ALJ's finding, and the Court will uphold it "even if an alternative position is also supported by substantial evidence." *Scheck*, 357 F.3d at 698. Whitfield's position, however, was not supported by substantial evidence. Her own subjective complaints were found not to be credible–particularly in light of the psychological evidence of malingering and symptom exaggeration. Nor is the prescription form from the chiropractor convincing. Not only is it not clear from the prescription form whether (or on what basis) Whitfield was diagnosed with a cervical or lumbar sprain, but it is not clear whether that would be considered a temporary or permanent injury. Furthermore, the chiropractor's prescription form is not the type of medical evidence the SSA considers in making determinations. *See* 20 C.F.R. § 1513(a). Accordingly, the Court finds that the ALJ's decision at step two is supported by substantial evidence.

The parties do not challenge the ALJ's step four conclusion that Whitfield's impairments do not equal any of the impairments listed (in Appendix 1 to the regulations) as being so severe as to preclude substantial gainful activity. The Court agrees that Whitfield's impairments do not meet or equal any listed in Appendix 1. For these reasons, the Court will not disturb the ALJ's findings with respect to step three.

*Whether Whitfield can perform her prior work*

With respect to step four, the ALJ carefully outlined Whitfield's objective medical evidence and her subjective complaints (noting that her subjective complaints were in many ways not credible). The ALJ concluded that Whitfield could not return to her past work. Of particular relevance to the ALJ was the fact that "claimant is unable to perform continuous manipulation and must use the dominant right upper extremity primarily to assist the left upper extremity." (R. 20). This is supported by substantial evidence. Specifically, the functional capacity evaluations concluded that Whitfield was limited in her ability to handle objects and perform finger manipulations with her right hand.

Neither party takes issue with the ALJ's conclusion at step four, and the Court will not disturb his findings.

*Whether Whitfield can perform other work*

At step five, the ALJ concluded:

Based on the testimony of the vocational expert, the undersigned concludes that considering the claimant's age, educational background, work experience, and residual functional capacity, she is capable of making a successful adjustment to work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore reached . . .

(R. 22).

-13-

The Court concludes that this finding is supported by substantial evidence. First, the functional capacity evaluations concluded that (1) Whitfield could lift a maximum of 20 pounds and could lift 10 pounds on a frequent basis; (2) Whitfield could stand or walk for six hours of an eight-hour shift (with breaks) and could sit for six hours of an eight-hour shift (with breaks); (3) Whitfield's left hand was unlimited; and (4) her right hand, while unlimited as to reaching, was limited as to handling objects and finger manipulation. Based on this information, the ALJ posed a hypothetical question to the vocational expert, who responded that a person with those capabilities could perform work as an usher or a desk guard, in one of approximately 6,000 positions in the metropolitan area. Although Whitfield's subjective complaints suggested she was more restricted (she stated, for example, that she could not sit or stand for more than ten minutes at a time), the ALJ's decision not to incorporate those complaints into a hypothetical question to the vocational expert was supported by substantial evidence. Specifically, the ALJ noted that her complaints were not credible given her ability to sit through the hearing for far longer than she said she could. He also noted that two psychologists found Whitfield to be malingering and/or exaggerating her symptoms.

Whitfield argues that the ALJ's decision is not supported by substantial evidence because the vocational expert was not asked to consider whether Whitfield's personality disorder affected her ability to work. Whitfield overstates the evidence of a personality disorder. Dr. Boyenga stated that Whitfield had a "mild" personality disorder that was "not severe" and that manifested itself in Whitfield's describing symptoms that did not match the objective evidence. Because the personality disorder was not severe and was not described as one that would affect Whitfield's ability to perform work, the ALJ did not need to include it in the hypothetical question. Even if

failure to include that information in the hypothetical would be considered error, the error is harmless because no reasonable person could conclude that Whitfield meets that statutory definition of a person with a "disability."

The final decision of the Commissioner of the Social Security Administration is supported by substantial evidence.

**IV.**  **Conclusion**

For the reasons set forth above, the Court denies plaintiff's motion for remand and denies plaintiff's motion for judgment. The Court grants defendant's motion for judgment.

ENTER:

George M. Marovich
United States District Judge

DATED:03/10/06